***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission modifies the Opinion and Award of Deputy Commissioner Griffin.
 *********** *Page 2 
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, the Commission has jurisdiction of the parties and of the subject matter of this action, and the parties are bound by the provisions of the Workers' Compensation Act.
2. All parties have been correctly designated.
3. The Hartford Insurance Company was the carrier on the risk on the date of incident that is the subject of this claim. Gallagher Bassett Services is the Third Party Administrator on this claim.
4. At all times relevant hereto, and particularly on March 18, 2005, the date of injury herein, the relationship of employee and employer existed between Jim Leviner and Premier Comp. II-CET.
5. Plaintiff sustained an admittedly compensable injury by accident arising out of an in the course of his employment with defendant-employer on March 18, 2005.
6. Defendant formally accepted plaintiff's claim as compensable on June 1, 2005 by filing North Carolina Industrial Commission Form 60.
7. The parties agree and stipulate that plaintiff's average weekly wage is $692.00, which results in a weekly compensation rate of $461.36.
 ***********
The following were submitted as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement *Page 3 
2. Defendants' Exhibit Number 1, Industrial Commission Forms and Orders, Plaintiff's correspondence with all parties, including the nurse case manager and vocational rehabilitation specialist, Medical Case Management Reports, Job Search Reports and Medical Records
 ***********
Based upon all the competent evidence of record, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 69 years old. Plaintiff received a Bachelor of Sciences degree in electrical engineering from North Carolina State University, a Bachelor of Sciences degree in mechanical engineering from the University of Pittsburgh, a Bachelor of Sciences degree in architectural engineering from the University of Pittsburgh and an Associate's Degree in Business Administration from the College of Alleghany. Additionally, plaintiff is a certified building inspector and has obtained a Professional Engineer Licensure. Plaintiff has worked for 35 to 40 years as either an electrical, mechanical or architectural engineer.
2. In February 2005, plaintiff began working as a building maintenance instructor with defendant-employer. On March 18, 2005, plaintiff sustained an injury to his back while lifting office furniture, which was accepted as compensable by defendants on an Industrial Commission Form 60.
3. On March 23, 2005, plaintiff presented to Dr. Dwayne Patterson at Raleigh Orthopaedic. Dr. Patterson diagnosed plaintiff with back pain with radicular syndrome. An MRI of the lumbar spine revealed normal findings. Over the course of his treatment, *Page 4 
Dr. Patterson prescribed epidural steroid injections, facet injections at both L4-5 and L5-S1, physical therapy and light-duty work restrictions.
4. On August 25, 2005, plaintiff underwent a return-to-work test, which revealed that plaintiff had a lifting ability in the 15 to 30 pound range. Dr. Patterson reviewed the results of the return-to-work test and agreed that plaintiff was capable of returning to work within the identified restrictions.
5. On December 16, 2005, Dr. Patterson referred plaintiff to Dr. Hsiupei Chen for a second opinion on his condition. Dr. Chen diagnosed plaintiff with low back pain with bilateral lower extremity radicular pain and possible left-sided facetogenic pain. Dr. Chen administered a left-sided facet injection at L4-5 and L5-S1.
6. On January 3, 2006, plaintiff returned to Dr. Patterson reporting no relief from the facet injections. Dr. Patterson noted plaintiff sent him a packet of documents consisting of internet research on trigger point injections. The submission included reports such as "my person assessment of chronic pain!" and "steps on how to live despite pain?" Dr. Patterson advised plaintiff to seek a second opinion from Dr. Chen.
7. On March 2, 2006, plaintiff presented to Dr. Scott Sanitate for an Independent Medical Evaluation. Dr. Sanitate diagnosed plaintiff with mechanical low back pain with underlying mild degenerative disc disease, no medical co-morbidities and bilateral lower extremity 1 to 2+ pretibial edema. He recommended plaintiff add Lidoderm patches, a TENS unit and/or dry-needling to his medical regime. If these additional procedures were not beneficial, Dr. Sanitate opined that plaintiff retained a 5% permanent partial disability rating to his back. He further opined that plaintiff could return to his activities as an instructor, but *Page 5 
recommended against heavy lifting. He did not feel that further diagnostic testing was warranted.
8. On May 4, 2006, plaintiff returned to Dr. Patterson with reports that he was doing reasonably well with the Ultracet and Lidoderm patches. At this time, Dr. Patterson determined that plaintiff reached maximum medical improvement and assigned a 5% permanent partial disability rating to his back. Dr. Patterson also assigned permanent work restrictions of no lifting greater than 3 to 5 pounds, working in a job which allows plaintiff to sit and stand as needed, and no bending or stooping.
9. After reaching maximum medical improvement, plaintiff continued pain management under the care of Dr. Patterson and Dr. Chen.
10. On January 8, 2008, Dr. Chen advised plaintiff that he could return to work. Dr. Chen encouraged plaintiff to consider returning to work as this would be a healthy and productive activity for him. Dr. Chen did not believe plaintiff's age precluded him from returning to work.
11. In September 2007, defendants initiated vocational rehabilitation services to assist plaintiff in locating suitable employment. Anthony Enoch at Wright Rehabilitation Services was assigned to plaintiff's claim. Mr. Enoch received a Bachelor of Arts degree in Social Work and a Master of Public Administration from East Carolina University. He is a certified social worker, certified disability management specialist and qualified rehabilitation professional with the North Carolina Worker's Compensation Board. Mr. Enoch has worked as a vocational rehabilitation specialist for more than seven years. Defendants tendered Mr. Enoch as an expert in the field of vocational rehabilitation, and the undersigned find that Mr. Enoch is an expert in this field. *Page 6 
12. Initially, plaintiff refused to meet with Mr. Enoch. Executive Secretary Tracey H. Weaver entered an Order on November 28, 2007 compelling plaintiff to comply with vocational rehabilitation services. On December 19, 2007, Mr. Enoch conducted an initial evaluation of plaintiff. Based on plaintiff's educational background and work history, Mr. Enoch felt that were no factors inhibiting plaintiff's ability to return to work.
13. Approximately 3 weeks prior to his deposition on September 9, 2008, Mr. Enoch completed a labor market survey, which contained a list of numerous available positions within plaintiff's qualifications, permanent work restrictions, general area of interest and geographical area. Each position paid a salary equal to or greater than the wages that plaintiff was earning prior to his compensable injury with defendant-employer. In particular, some of the positions actually paid more than double plaintiff's pre-injury earnings. In his survey, Mr. Enoch specifically excluded any jobs that required skills beyond plaintiff's ability such as fluency in a foreign language or beyond his interests, such as positions requiring lengthy world travel. Mr. Enoch testified that he found that many people over the age of 65 years old were desirable candidates, particularly for the kinds of jobs plaintiff was qualified to work. The undersigned find that based on the labor market survey conducted by Mr. Enoch, there were several potential jobs which plaintiff was capable of performing in light of his qualifications, permanent work restrictions, general area of interest and geographical area.
14. After the initial meeting, plaintiff demonstrated limited effort in utilizing the vocational rehabilitation services. Plaintiff showed little interests in the jobs identified and did not apply for most of the jobs as recommended by Mr. Enoch. At one point, plaintiff refused to perform any independent job searches and refused to post his resume online. In his correspondence to Mr. Enoch, plaintiff focused much of his attention on whether Mr. Enoch was *Page 7 
following the North Carolina Industrial Commission Rules for Utilization of Rehabilitation Professionals in Workers' Compensation Claims. Plaintiff also discussed non-related topics and attached suggestive "clip art" to his letters to Mr. Enoch. For instance, in a letter dated March 10, 2008, plaintiff expressed his intent to continue recording their vocational rehabilitation meetings and discussed for an entire page his theory of "Deception leads to a Propaganda". On his job search log submitted for March 17, 2008, plaintiff submitted his reason for not agreeing to post his resume online, which included a reference to a study about people lying in everyday conversation and "clip art" with a man with an abnormally long nose.
15. Plaintiff reported to Mr. Enoch that he did not apply for the identified positions because he felt they were "out of his expertise". Plaintiff would not consider a position involving a particular product that was not the subject of his previous jobs. For example, plaintiff refused to apply for an engineering position that involved working with photo frames or roadway designs. Based on his extensive educational background and work history, plaintiff possesses transferrable skills, which may be applied to positions involving products outside of his prior work history.
16. Despite Mr. Enoch's testimony regarding plaintiff's incidents of noncompliance, Mr. Enoch opined that plaintiff was mostly compliant.
17. Mr. Stephan Carpenter, a vocational rehabilitation expert, reviewed plaintiff's medical restrictions assigned by Dr. Patterson and Mr. Enoch's reports. Mr. Carpenter opined that plaintiff's permanent work restrictions precluded plaintiff from any competitive employment. However, the Full Commission gives greater weight to the testimony of Mr. Enoch who actually assisted plaintiff with his vocational rehabilitation efforts. *Page 8 
18. Plaintiff has remained out of work since his compensable injury on March 18, 2005. As of the date of the hearing before the Deputy Commissioner, defendants have paid all medical and indemnity benefits owed to plaintiff.
19. Plaintiff's treating physicians have opined that he is capable of returning to work within his permanent restrictions. Defendants initiated vocational rehabilitation to assist plaintiff in returning to suitable employment. Based on a review of all the competent evidence of record, the Full Commission finds that plaintiff is capable of employment and is capable of complying with vocational rehabilitation as ordered by Executive Secretary Weaver on November 28, 2007.
20. Based on plaintiff's extensive educational background, approximately 40 years of work experience in the engineering field, the testimony of Mr. Enoch and the labor market survey, which has identified several suitable positions for plaintiff, the undersigned finds that plaintiff is capable of finding suitable employment.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 18, 2005, plaintiff sustained a compensable back injury, which resulted in permanent work restrictions. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v.Apex Cabinet Co., 305 N.C. 593, *Page 9 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. Lowes ProductDistribution, supra.
3. The greater weight of the evidence shows that plaintiff is capable of working within his restrictions, but after reasonable effort has been unable to find suitable employment. Id.
Therefore, plaintiff is entitled to ongoing temporary total disability benefits at the rate of $461.36 per week so long as plaintiff complies for vocational rehabilitation until plaintiff returns to suitable employment or further order of the Commission.Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 765, 425 S.E2d 454, 457 (1993). Johnson v.Southern Tire Sales Service,358 N.C. 701, 706, 599 S.E.2d 508, 512 (2004). For these reasons, defendants' Form 24 Application to Terminate or Suspend Payments of March 17, 2008 is DENIED.
4. Plaintiff is entitled to have defendants provide vocational rehabilitation in order to return plaintiff to suitable employment. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following: *Page 10 
 AWARD
1. Defendants shall pay to plaintiff ongoing temporary total disability benefits at the rate of $461.36 per week until plaintiff returns to suitable employment or further order of the Commission so long as plaintiff is compliant with vocational rehabilitation efforts.
2. Plaintiff is hereby ordered to comply with all vocational rehabilitation efforts to be provided by defendants.
3. Defendants shall bear the costs.
This the 26th day of July 2010.
 S/__________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/__________ CHRISTOPHER SCOTT COMMISSIONER
 S/__________ BERNADINE S. BALLANCE COMMISSIONER *Page 1